FILED
2019 Jan-30 AM 08:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| TIMOTHY W. FRENCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:17-cv-2173-TMP |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

## I.     Introduction

The plaintiff, Timothy W. French, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner")[1] denying his application for a period of disability and Disability Insurance Benefits ("DIB"). Mr. French timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8).

---

[1] It appears, from the briefs filed by the Government in other Social Security cases and from news reports, that there is neither a Commissioner nor an Acting Commissioner currently serving in the Administration, but that the functions of the job still are being performed by Nancy A. Berryhill.

The plaintiff was 44 years old on the alleged disability onset date. (Tr. at 27). His past work experience includes employment as a truck driver. (Tr. at 27). The plaintiff claims that he became disabled on August 21, 2013, due to chronic pancreatitis, arsenic poisoning, and "Gillians [sic] Barre Syndrome." (Tr. at 152).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920; see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, the claimant is not disabled and the evaluation stops. Id. If he is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. Id. The decision depends on the medical evidence in the record. See Hart v. Finch, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's

impairments fall within this category, he will be found disabled without further consideration. Id. If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his past relevant work, the claimant is not disabled and the evaluation stops. Id. If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. Id. Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. Id. The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; once that burden is met, the claimant must prove his inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that the plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of December 11, 2014. (Tr. at 19). According to the ALJ, the plaintiff has the following impairments that are considered "severe," based on the requirements set forth in the regulations: "chronic pancreatitis, gastroesophageal reflux disease, obesity, major depressive disorder, and panic disorder." Id. The ALJ found that the plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 20. The ALJ found the plaintiff to have a "mild limitation in understanding, remembering, or applying information, mild limitation in interacting with others, moderate limitation in concentrating, persisting, or maintaining pace, and mild limitation in adapting or managing oneself." (Tr. at 20-1). The ALJ determined that the plaintiff has the residual functional capacity to perform work at a light level of exertion as defined in 20 CFR § 404.1567(b) with additional limitations. (Tr. at 23). The ALJ further elaborated:

> …[T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except that he can occasionally balance, stoop, climb ramps, and stairs, and push/pull with the lower extremities bilaterally. He should not have exposure to hazards. He can understand, remember, and carry out simple instructions and attend to them for two-hour periods.

(Tr. at 23)

According to the ALJ, the plaintiff is unable to perform any of his past relevant work and has "at least a high school education and is able to communicate in English" as those terms are defined by the regulations. (Tr. at 27). She determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." Id. However, because she also determined that he could not perform the full range of light duty, she received the testimony of a vocational expert to determine whether there are jobs in the national and local economies the claimant could perform. Id. Even though the plaintiff is limited to light work, the ALJ determined that there are a significant number of jobs in the national economy that he is capable of performing, such as marker, cleaner, and router. (Tr. at 28). The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, since December 11, 2014, the alleged onset date of disability." Id.

## II. Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether

there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. See Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. See Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. Id. "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Parker v. Bowen, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting Consolo v. Federal Mar. Comm'n, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. Miles, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct

legal standards is grounds for reversal. See Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III. Discussion

Mr. French argues that the ALJ's decision was erroneous and should be reversed and remanded because the ALJ failed to properly consider his testimony about the intensity, frequency, and duration of his pain and other subjective complaints. (Doc. 13, p. 11). The Commissioner, on the other hand, argues that

the ALJ's subjective complaint analysis is supported by substantial evidence in the record indicating that the claimant's complaints about pain are not fully credible. (Doc. 14, pp. 5-6).

As to the plaintiff's subjective complaints, the ALJ specifically stated:

> The claimant alleged, during the hearing, [that] he was "sick" every day and had cramps and nausea. He reported that he had back pain, which affected his ability to stand and walk. He stated his pain was worse after eating. He rated his average pain level as an 8 on a 10-point pain scale. He related that he would lie down for 5 to 6 hours per day. He stated that he could not stand for long periods and was unable to lift a gallon of milk. He indicated that he had difficulty watching television and a lack of concentration, and that he was unable to watch a two-hour long movie.
>
> However, the undersigned notes that various aspects of the record give rise to questions as to inconsistencies between the testimony and the medical evidence of record. The claimant testified that he was "sick" and had nausea and abdominal cramps daily. Yet, the medical evidence of record documents that throughout the period in question the claimant actually gained weight. Dr. Kaplan noted on November 3, 2014, that the claimant weighed 255 pounds (Exhibit 7F). Dr. Philpot observed on November 11, 2015, that the claimant weighed 261 pounds (Exhibit 4F). During the claimant's consultative physical examination on September 3, 2016, Dr. Iyer stated that the claimant weighed 291 (Exhibit 6F).
>
> At the hearing, the claimant testified that he was experiencing an average pain level of 8 on a 10-point pain scale, yet he was able to carry on a conversation and answer questions with what appeared to be little difficulty. While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of pain on a day-to-day basis, the apparent lack of discomfort during the hearing is given some slight weight in reaching the conclusion

> regarding the intensity of the claimant's allegations and the claimant's residual functional capacity.

(Tr. at 24).

The Eleventh Circuit has an established pain standard to direct ALJs in evaluating claimant's subjective allegations of disabling pain. Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. See Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)); see also Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms only if she articulates explicit and adequate reasons for doing so. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). Under Social

Security Ruling ("SSR") 96-7p[2], the evaluation of the credibility of a claimant's subjective complaints of pain requires specific reasons for disregarding the claimant's testimony:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p (1996). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" Dyer, 395 F.3d at 1210 (quoting Foote, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection" which is "not enough to enable

---

[2] SSR 96-7p, which was in effect at the time of the claimant's adjudication by the ALJ, has been superseded by SSR 16-3p, which took effect in March of 2016. The new regulation removes the term "credibility" from the policy, and clarifies that "subjective symptom evaluation is not an examination of an individual's character." SSR16-3p, 2016 WL 1119029 at *1. Plaintiff does not argue that the newer regulation should apply retroactively, and the Eleventh Circuit Court of Appeals has recently determined that it does not. Hargress v. Soc. Sec. Admin., Comm'r, No. 17-11683, 2018 WL 1061567 (11th Cir. Feb. 27, 2018) (holding that the rule "applies only prospectively and does not provide a basis for remand"). Accordingly, the court evaluates the ALJ's assessment in light of SSR 96-7p.

[the district court or this Court] to conclude that [the ALJ] considered [Plaintiff's] medical condition as a whole." Id.

The ALJ determined that the plaintiff met the first step of the pain standard; that is, the plaintiff provided evidence of an underlying medical condition. See Dyer, 395 at 1210. The ALJ found that "the claimant's underlying medically determinable impairments, which are established by medically acceptable clinical and laboratory diagnostic techniques, can reasonably be expected to produce some symptoms." (Tr. at 30). However, the ALJ determined that the plaintiff did not meet the second or third step of the pain standard. See Dyer, 395 at 1210.

The relevant portions of Plaintiff's testimony before the ALJ were as follows:

> Q. Mr. French, could you please describe to the Court the symptoms that you've been experiencing that would prevent you from being able to do any type of work on a regular and continuing basis?
>
> A. Every - - everyday I'm sick when I get up from the time I get up until I go to bed. I've got - - I'm cramped and I'm nauseated. [INAUDIBLE] and I've got back pain around my back just trying to stand and brush my teeth in the lavatory. I - - I hurt in my back and I have to sit down. Whenever I try to walk or stand, I'm looking for a place to sit down because I'm cramping over here where I had the stomach tube earlier when I was a kid.
>
> …
>
> Q. How would you describe the pain?
>
> A. It's - - I just feel like I need to throw up all the time. I mean it - - it never goes away.

> Q. Do you have good days and bad days with your pain or is it about the same everyday[sic]?
>
> A. It's about the same everyday[sic]. I mean I just - - I don't feel like doing anything.
>
> Q. Is the pain constant or does it come and go?
>
> A. It's - - it's - - it's worse after I - - if I eat something, but it's - - it's about the same all the time and it - - in this - - I cramp. When I eat something, it just - - it don't go down. It wants to come back up.
>
> Q. And how would you rate your pain on a scale of 0 to 10 with 10 being the type of pain you're in the emergency room receiving treatment and 0 being no pain at all?
>
> A. On - - on the average, it around - - I rate it around eight and when I try to walk or start cramping, it's in the 10. It's like when I'm cramping on my insides, it's like an electric tram.

(Tr. at 37-8).

The ALJ found that this testimony about the disabling effects of his pain was inconsistent with the plaintiff's medical records. Upon review of the medical evidence of record the court finds substantial evidence to support the ALJ's credibility determination.

Plaintiff has a long history of treatment and testing for abdominal pain. The first documentation of a doctor's visit for abdominal pain was a visit with Dr. Pugliese in July of 2012. (Tr. at 227). At that visit, the plaintiff stated that the pain had begun a few weeks before. Id. Plaintiff was seen again by Dr. Pugliese

in November of 2012. (Tr. at 230). He still complained of pain in the left upper quadrant of his abdomen, but was noted to be in no acute distress. Id. at 230-1. Contemporaneously to these appointments, Plaintiff underwent an esophagogastroduodenoscopy and a colonoscopy. These tests resulted in a diagnosis of hiatus hernia, mild antral gastritis, a pharyngeal polyp, and hemorrhoidal disease. (Tr. at 220, 224). Plaintiff seems not to have sought any additional treatment until 2014.

In 2014, plaintiff's medical records demonstrate more doctors' visits for abdominal pain. Plaintiff also underwent a contrast x-ray that noted slight diverticulosis, an abdominal ultrasound that was normal, an upper GI that was normal, and a colonoscopy that found hemorrhoids, diverticulum, and angiodysplasia that may have been related to scope trauma. (Tr. at 305-21). These tests were performed under the care of Dr. Kaplan. Id. At the plaintiff's follow-up and office visits with Dr. Kaplan, Dr. Kaplan noted that the plaintiff was in "NAD[3]." (Tr. at 288-304). Additionally, the plaintiff was noted to have mild, very mild, or no abdominal tenderness. Id. He was also noted to be healthy and well-nourished. (Tr. at 288-304).

In late 2014, Plaintiff was diagnosed with early chronic pancreatitis with severe lobularization by Dr. Philpot. (Tr. at 242). Plaintiff did not seek any

---

[3] NAD is shorthand for "no acute distress."

additional medical treatment until November 11, 2015, when he had a follow-up appointment with Dr. Philpot. At that appointment he noted that his abdominal pain was recurrent when he would eat and that he believed that the pancreatic enzymes had been helpful in treating his condition. (Tr. at 261). Dr. Philpot noted that the plaintiff was in no acute distress and had a soft, non-tender, and non-distended abdomen. (Tr. at 262). Dr. Philpot echoed those findings at his March 24, 2015, checkup. (Tr. at 264). Plaintiff did not seek any further treatment until October 3, 2016, when he was seen for anxiety and reported abdominal pain. (Tr. at 342). However, by October 13, 2016, Plaintiff was "negative" for abdominal pain. (Tr. at 330).

Plaintiff had a consultative examination with Dr. Iyer. (Tr. at 276-84). Dr. Iyer noted the plaintiff was "pleasant" and in "no acute distress." (Tr. at 277). Additionally, the plaintiff's abdomen was noted "soft, obese, mild epigastric tenderness to palpation, [and] non-distended." Id. Dr. Iyer opined that the plaintiff would have some limitation of "standing, walking, climbing steps, bending, lifting, twisting, carrying, [and] reaching overhead," but would have no limitation in "sitting, handling, hearing, and speaking." (Tr. at 278). Plaintiff was able to get off and on the exam table with only mild difficulty, had 5/5 strength except with foot dorsiflexion, and full range of motion in all of his joints. Id.

Notably, at the hearing, the plaintiff's lawyer asked him to rate his pain from 1 to 10 with 10 being pain so severe he would be in the emergency room receiving treatment. (Tr. 37-8). Plaintiff stated that his average pain was around an 8, but when he ate or started cramping the pain was a 10. Id. However, there is no evidence in the medical records that the plaintiff ever sought treatment in an emergency room. Additionally, the plaintiff was never noted to be in "acute distress" by his doctors despite alleging nearly constant, severe pain.

Furthermore, the plaintiff's complaints to his doctor are inconsistent. On September 4, 2014, Plaintiff reported that his pain was not related to eating and that some days he hurt and some days he didn't. (Tr. at 291). On August 4, 2014, however, he reported that his pain was worse after he ate. (Tr. at 294). On July 9, 2014, Plaintiff reported daily and constant pain. (Tr. at 299). While a plaintiff clearly need not report identical pain at every visit, the changes in the plaintiff's reporting of pain provides substantial evidence for the ALJ to question the plaintiff's reports of disabling pain.

To the extent that the plaintiff argues that the ALJ failed to give adequate reasons for discounting the plaintiff's subjective complaints, such arguments are not meritorious. ALJ clearly stated that she was not crediting the plaintiff's allegations of extremely severe and disabling pain. See (Tr. at 24-6). First, the ALJ noted that Plaintiff's continued weight gain discredited his complaints that he

was sick and nauseated all the time. (Tr. at 24). Additionally, the plaintiff stated that he was in constant severe pain, with an average level of 8 out of 10, yet he was able to carry on a conversation and respond to his attorney's questioning. Id. Additionally, Plaintiff's care providers noted that he was in "no acute distress," had no or mild tenderness in his abdomen, had a normal gait and station, and would have only some restrictions due to his medical condition. (Tr. at 25).

Finally, Plaintiff argues that the ALJ was essentially taking on the role of doctor when he did not credit plaintiff's allegations that he was "sick" and nauseated all of the time because he gained weight. However, even if the court were to accept the plaintiff's argument, any error was harmless because there would still be plenty of remaining substantial evidence to support the ALJ's credibility determination. At the end of the day, the burden is on the plaintiff to establish a disability. See Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a). The ALJ concluded that the plaintiff had not carried that burden, and the court finds that there is substantial evidence to support that finding.

## IV. Conclusion

Upon review of the administrative record, and considering all of Mr. French's arguments, the Court finds the Commissioner's decision is supported by

substantial evidence and in accord with the applicable law. A separate order will be entered affirming the Commissioner's determination.

DONE this 28th day of January, 2019.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE